# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARKEL INSURANCE COMPANY, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>MIKE BURNS, d/b/a Mike's Pest Control; SHANE BURNS, d/b/a Mike's Pest Control; BILL'S FISH HOUSE, INC., d/b/a Bill's Fish House Too; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; TRUCK INSURANCE EXCHANGE; THE CITY OF LONE GROVE, OKLAHOMA; THE CITY OF LONE GROVE, OKLAHOMA WATER AND SEWAGE TRUST AUTHORITY; LARRY RUTLEDGE, d/b/a Bowl-A-Rama; MERLENE MARTIN; PAT BURNS, d/b/a Mike's Pest Control; and BRADFORD-IRWIN INSURANCE AGENCY, INC.;<br><br>   Defendants. | Case No. CIV-09-185-SPS |

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On January 23, 2008, the Defendant Mike Burns (d/b/a Mike's Pest Control) was filling a chemical tank on his commercial truck with water from a hose attached to an outdoor water faucet at his home in Lone Grove, Oklahoma. A city water main broke,

and pesticides were siphoned into the public water supply of the City of Lone Grove. The resulting remediation efforts closed schools and business and left residents without water for as many as ten days. Burns had a backflow preventer on the tank but was not using it because the check valve was frozen.

The City of Lone Grove and its trust authority sued Burns for contaminating the water supply in the District Court of Carter County (Case No. CJ 2009-56). Burns sought a defense from the Plaintiff Markel Insurance Company, the issuer of his commercial general liability insurance policy (CGL). Markel denied coverage, refused to defend Burns in the Carter County suit and filed this action seeking declaratory relief relieving it of any obligation to defend or indemnify Burns in connection with the contamination. At about the same time, Burns sued Markel over its denial of coverage in the District Court of Carter County (Case No. CJ 2009-161). Both state court cases were stayed pending the outcome of this case, and most of the parties pled into this action by Markel have asserted their various claims here. Markel moved for sought summary judgment pursuant to Fed. R. Civ. P. 56 on its claim for declaratory relief, contending there are no issues of material fact regarding the issue of pollution coverage for Burns under the CGL. As set forth below, the Court finds that the Plaintiff's Motion and Brief for Summary Judgment [Docket No. 85] should be GRANTED.

### A. Law Applicable to Summary Judgment

Summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "there

is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, an adverse party must, under Fed. R. Civ. P. 56(e), "properly support an assertion of fact or . . . properly address another party's assertion of fact as required by Rule 56(c)", *i. e.*, by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c), (e). The parties do not dispute the relevant underlying facts in this case, *i. e.*, that the pollution emitted from a chemical tank mounted to Mike Burns' work truck, which was parked at Mike Burns' residence and was being filled with a garden hose from a faucet on Mike Burns' residence, making summary judgment a proper mechanism for the adjudication of this dispute.

### B. Analysis

Markel denied coverage, and contends that it is entitled to summary judgment on its claim for declaratory relief, because of exclusion 2(f)(1)(a) of Coverage A of the CGL as to bodily injury and property damage liability, which provides in pertinent part: "This insurance does not apply to . . . '[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' . . . [a]t or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured." There is no dispute here that

the pesticides that contaminated the public water supply in Lone Grove escaped from the chemical tank while it was located on Mike Burns' own property. The question is thus whether the CGL contains any ambiguity creating a question of fact as to the availability of coverage for Burns and parties claiming through him.[1] Burns contends that the CGL does contain such ambiguity in the following particulars: (i) the terms "premises," "location" and "occupied" in the exclusion are undefined and are therefore ambiguous; and, (ii) ambiguity arises from endorsements to the policy affecting coverage.

The Court finds no ambiguity in the terms of the exclusion itself. Markel points out that the Oklahoma Supreme Court has considered this exclusionary language, *i. e.*, "'[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . [a]t or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured[,]" and found it to be an unambiguous and effective exclusion of coverage regarding pollution. *See Bituminous Casualty Corp. v. Cowen Construction, Inc.,* 2002 OK 34, ¶¶ 11-13, 55 P.3d 1030, 1033-34 ("Our review discloses no observable ambiguity in the exclusion's language found on the insurance policy's face. Giving the language used in the pollution-exclusion clause-as stated in the special endorsement-its plain and ordinary meaning evinces an exclusion of coverage for bodily

---

[1] Mike Burns is joined in this action by wife Pat and son Shane, both whom are alleged to do business with him as Mike's Pest Control. *See* Docket No. 126. The Court will refer to those defendants collectively as "Burns" for purposes of discussion. Burns is aligned on the issue of summary judgment with the Defendants City of Lone Grove, Oklahoma and City of Lone Grove, Water and Sewage Trust Authority (referred to collectively as "the City"), *see* Docket No. 128, and the Defendant Bill's Fish House, Inc. d/b/a Bill's Fish House, Too. *See* Docket No. 127.

injury or property damage caused by a pollutant's release."). And while the *Bituminous Casualty* court specifically considered only the first part of the exclusion at issue here, this Court finds nothing ambiguous about the second, *i. e.*, "[a]t or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured." It is clear that the intent of the language is to exclude coverage for pollution arising from the discharge of pollutants at Burns' own property, his contrary arguments notwithstanding. *See Bituminous Casualty,* 2002 OK at ¶ 12, 55 P.3d at 1034 ("An insured cannot insist upon a strained construction of relevant policy language in order to claim a patent ambiguity exists nor can it contradict the written instrument's plain terms under the guise of a latent ambiguity."), *citing Druggists' Mutual Fire Insurance Co. of Iowa v. Shaw,* 1935 OK 132, 41 P.2d 69, 70.

Burns also argues that ambiguity arises from three endorsements to the CGL, two of which purport to restore coverage denied by exclusion 2(f)(1) of Coverage A while the other purports to exclude pollution coverage in its entirety. The Pesticide or Herbicide Applicator Coverage endorsement (PHAC) modifies exclusion 2(f)(1)(d) of Coverage A (regarding "'[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' . . . [a]t or from any premises, site or location on which the insured . . . are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured") and provides in pertinent part: "With respect to [exterminating and fumigating operations including lawn spray]; Paragraph (1)(d) of exclusion f. Pollution of COVERAGE A (Section 1) does not apply if the

operations meet all standards of all statutes, ordinances, regulations or license requirements of all federal, state or local governments which apply to those operations." Further, the Pesticide or Herbicide Applicator Pollution Liability-Coverage Extension endorsement (PHAPL) modifies exclusion 2(f)(1)(c) of Coverage A (regarding "'[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' . . . [w]hich are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for . . . any insured"), and provides in pertinent part: "With respect to [exterminating and fumigating operations including lawn spray]; Paragraph (1)(c) of exclusion f. Pollution of COVERAGE A (Section 1) does not apply to 'bodily injury' or 'property damage' arising out of the actual discharge, dispersal, release or escape of 'pollutants' that are contained in any property that is being transported or towed by an 'auto' owned or operated by . . . any insured if . . . [t]he 'pollutants' escape, discharge, dispersal or release is caused by the 'auto's' collision with another object; or the overturn of the 'auto'; and . . . [t]he operations meet all standards of any statute, ordinance, regulation or license requirements of any federal, state or local government which apply to these operations."[2] Finally, the Total Pollution Exclusion endorsement (TPC) purports to replace exclusion 2(f) entirely and provides in pertinent part: "This insurance does not apply to . . . '[b]odily injury' or 'property damage' which would not have occurred in whole or part

---

[2] Both the PHAC and the PHAPL also modify exclusion 2(f)(2), those modifications are not pertinent to the facts of this case.

but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."

The Court finds that these endorsements do not create any ambiguity in exclusion 2(f)(1)(a) of Coverage A of the CGL. First, neither the PHAC nor the PHAPL applies in any way to exclusion 2(f)(1)(a); the former by its terms applies to exclusion 2(f)(1)(d), while the latter by its terms applies to exclusion 2(f)(1)(c). Burns contends that these endorsements arguably apply to the facts of this case because "it is certainly not clear that 'operations' would not include filling the pesticide/herbicide tank truck-an act absolutely necessary for the performance of Defendants' operations." *See* Docket No. 126, p. 14. As Markel notes, "operations" is a defined term that does not include filling a chemical tank with water, *see* Docket No. 129, p. 7, but even if such activity could be characterized as "operations," it would be of no avail to Burns because both endorsements afford coverage only where there is compliance with "all standards of all statutes, ordinances, regulations or license requirements of all federal, state or local governments which apply to those operations[,]" and Burns admits that he was violating state regulations by filling his tank without a backflow preventer.[3] In any event, there is nothing in either endorsement to

---

[3] Burns argues that a provision requiring compliance with all applicable legal authorities would be ambiguous, citing *Home Exterminating Co. v. Zurich-American Insurance Group,* 921 F. Supp. 318, 323 (D. Md. 1996). This Court does not agree that the language "all standards of all statutes, ordinances, regulations or license requirements" in the PHAC and the PHAPL is ambiguous, but *Home Exterminating* is clearly distinguishable in any event. The court there reasoned that a provision requiring compliance with a regulation imposing a general obligation to perform operations with due care would essentially be an escape clause for an insurer, as an insured would seldom if ever be liable without a failure of due care. 921 F. Supp. At 324 ("Insurance is procured to protect the violator, and every violation cannot nullify coverage."), *citing Ranger Insurance Co. v. Culberson,* 454 F.2d 867, 864-65 (5th Cir. 1971), *cert. denied,* 407 U.S. 916 (1972). This case, on the other hand, involves an admittedly intentional violation of a specific safety regulation.

suggest it was intended to apply to any "operations" occurring on Burns' own property, but exclusion 2(f)(1)(a) unequivocally does apply thereto.

Second, while the TPC *does* affect exclusion 2(f)(1)(a) of Coverage A, *i. e.*, the endorsement replaces exclusion 2 as to pollution in its entirety, there is nothing inherently ambiguous about replacing an exclusion of some specified pollution with an exclusion of all pollution generally. Burns argues that the blanket exclusion of coverage for pollution contained in the TPC is inconsistent with the kind of insurance he was seeking, and with the way the CGL was represented to him. But such arguments are not about ambiguity. Furthermore, Burns has not called the Court's attention to any public policy frustrated by a general exclusion of coverage for pollution, or otherwise advanced any argument that the TPC would be unenforceable for unconscionability on the facts of this case.

Third, while it is difficult to harmonize the TPC's blanket exclusion of coverage with the PHAC and the PHAPL's coverage-affording language, this does not render the CGL ambiguous for purposes of this case. Burns notes the TPC is inherently inconsistent with the language of the CGL itself and with the other two endorsements, and asserts this renders the whole CGL ambiguous. Markel apparently does not deny this inconsistency, but instead suggests a number of ways the Court might address it, *e. g.*, concluding the TPC was not intended to be part of the CGL and reforming the contract between the parties for mutual mistake. It is unnecessary for the Court to do this, however, as it is clear that Burns would have no coverage on these facts under any reasonable construction of the CGL. For example, if the agreement between the parties is the CGL as amended by the PHAC and the PHAPL (which seems most likely, as Markel acknowledges Burns

paid a premium for the additional coverage afforded by the endorsements), then coverage is excluded by exclusion 2(f)(1)(a) of Coverage A for pollution escaping from Burns' own property, or by the endorsements for intentional violation of the regulation requiring use of a backflow preventer. If on the other hand the agreement between the parties is the CGL as amended by the TPC, then coverage is excluded by exclusion 2(f)(1)(a) of Coverage A or by the blanket exclusion of the TPC. Finally, if the agreement between the parties is simply the CGL itself (the only other possibility aside from harmonizing the inconsistent language from all four instruments), then coverage is once again excluded by exclusion 2(f)(1)(a). Thus, there is no reasonable construction of the agreement between the parties but that coverage is excluded for the accident at issue here, so there is no ambiguity on the facts of this case. *See Haworth v. Jantzen*, 2006 OK 35, ¶ 13, 172 P.3d 193, 196 ("An insurance contract is ambiguous only if it is susceptible to *two constructions on its face* from the standpoint of a reasonably prudent layperson[.]") [emphasis added] [citations omitted]. *See also Red Panther Chemical Co. v. Insurance Co. of the State of Pennsylvania,* 43 F.3d 514, 517 (10th Cir. 1994) ("[T]he exclusion can be considered unambiguous only if one can read its text in conjunction with the facts . . . and reach the conclusion the claim falls within the exclusion's terms. If there are two reasonable interpretations of the exclusion, then it is considered ambiguous.").

Markel is under no duty to indemnify Burns here because the activity in which he was engaged at the time of the loss was specifically excluded by the policy. But the duty to defend an insured is potentially broader than the duty to indemnify. "An insurer has a duty to defend . . . whenever it ascertains the presence of facts that give rise to the

potential of liability under the policy." *First Bank of Turley v. Fidelity & Deposit Insurance Company of Maryland*, 1996 OK 105, ¶ 13, 928 P.2d 298, 303. But if there is "no potential for liability under" the policy, the insurer "has no duty to defend." *National American Insurance Co. v. Okemah Management Co.*, 2008 OK CIV APP 58, ¶ 12, 189 P.3d 1223, 1226. As discussed above, there is no dispute as to the underlying facts of this case, and the policy language unambiguously excludes coverage for the pollution on these undisputed facts. Markel therefore has no duty to defend Burns in the Carter County suits.

### C. Conclusion

In summary, there is no dispute regarding the underlying facts of this case, and no reasonable interpretation of the insurance contract between the parties but that the loss herein was excluded from coverage. Markel is therefore entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56, and the Plaintiff Markel's Motion and Brief for Summary Judgment [Docket No. 85] is accordingly hereby GRANTED.

IT IS SO ORDERED this 8th day of April, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma